IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No. 6:17CR 30 JUDGE RC/KNM |
| RACHELLE DASHNER | § | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### General Allegations

At all times relevant to this Information:

1. Community Trust Bank was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in Louisiana and had branches within the Eastern District of Texas.

2. **Rachelle Dashner** resided in or around Dallas, Texas.

### COUNT 1

Violation: 18 U.S.C. § 371
(Conspiracy to Commit Bank Fraud)

1. The General Allegations section of this Information is realleged and incorporated by reference as though fully set forth herein.

2. From in or about October 2013, and continuing through in or about June 2014, in the Eastern District of Texas, and elsewhere, the defendant, **Rachelle Dashner**, along with Albert Michael Davis a/k/a Bert Davis, David Tayce, and others, both known and unknown, did knowingly and willfully combine, conspire, confederate, and agree to

Indictment – Page 1

violate 18 U.S.C. § 1344, bank fraud, that is to execute and attempt to execute a scheme and artifice to obtain money, funds, assets, securities, and other property owned by and under the custody and control of an insured financial institution by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose of the Conspiracy

3. It was the general purpose of the conspiracy for the defendant and her co-conspirators to unlawfully obtain money from financial institutions through false and fraudulent pretenses, representations, and promises.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. To achieve the goals of the conspiracy, the defendant and her co-conspirators devised and carried out a scheme to obtain money and property from Community Trust Bank (CTB) by means of false and fraudulent pretenses, representations, and promises.

5. **Dashner** and her co-conspirators created lists of investors who would purportedly serve as guarantors of various loans.

6. **Dashner** and her co-conspirators would obtain signatures from some of the investors on documents such as promissory notes and commercial guaranties by leading the investors to believe they were signing other types of documents.

7. **Dashner** and her co-conspirators would forge the signatures of other investors from whom they were unable to obtain signatures.

8. **Dashner** and her co-conspirators prepared loan documents in which they represented that such investors were guarantors of the loans.

9. **Dashner** and her co-conspirators submitted fraudulent loan documents to CTB and secured five fraudulent loans totaling over $7,500,000.

### Overt Acts

In furtherance of the conspiracy and to achieve its objects and purpose, the following overt acts, among others, were committed in the Eastern District of Texas and elsewhere:

10. In the summer of 2013, Davis and Tayce approached CTB regarding the possibility of CTB financing iHeart Care cardiovascular surgical centers that Davis and Tayce planned to develop across North Texas. The plan, as outlined by Davis and Tayce, was to open multiple iHeart cardiovascular surgical centers over a 24-month period and team up with 12 to 18 physicians at each location who would invest in the surgical center and refer patients to the cardiovascular practice.

11. In or about October 2013, **Dashner** assisted Davis and Tayce in the preparation of loan documents, which included a list of physicians who were represented to be guarantors of the loan, knowing that at least two of the names on the list were obtained without the knowledge of the physicians. The loan documents were submitted to CTB, and based upon these false and fraudulent representations, on or about October 4, 2013, CTB funded a loan to iHeart in the amount of $1,590,062.

12. In or about November 2013, **Dashner** obtained signatures from several physicians, including TQ, JF, SW, and AK. **Dashner** informed these physicians that she needed their signatures for purposes related to their investments in iHeart. **Dashner** knew that the names of these physicians would be submitted to CTB as guarantors of a loan for an iHeart project in Denton, Texas. She knew that the physicians' signatures would be represented as agreements on behalf of the physicians to guarantee pro rata shares of the loan. The loan documents were submitted to CTB, and based upon false and fraudulent representations, on or about November 26, 2013, CTB funded a loan to iHeart in the amount of $1,577,073.85.

13. In or about January 2014, **Dashner** assisted Davis and Tayce with the creation of a fraudulent list of investors in an iHeart facility in Ennis, Texas, knowing that the project did not actually exist. **Dashner** knew that names of these physicians on the list would be submitted to CTB as guarantors of a loan, when in fact, none of individuals had invested in the Ennis facility nor had agreed to guarantee the loan. The loan documents were submitted to CTB, and based upon these false and fraudulent representations, CTB funded a loan to iHeart and disbursed the proceeds as follows: $450,000 on January 29, 2014; $139,585 on February 14, 2014; $625,000 on February 28, 2014; $280,000 on May 13, 2014; and $155,200 on May 30, 2014.

14. In or about February 2014, **Dashner** assisted Davis and Tayce with the creation of a fraudulent list of investors in an iHeart facility in Mesquite, Texas, knowing that the project did not actually exist. **Dashner** knew that names of these physicians on the list would be submitted to CTB as guarantors of a loan, when in fact, none of

Indictment – Page 4

individuals had invested in the Mesquite facility nor had agreed to guarantee the loan. The loan documents were submitted to CTB, and based upon these false and fraudulent representations, CTB funded a loan to iHeart and disbursed the proceeds as follows: $565,000 on February 27, 2014; $648,050 on March 18, 2014; $290,000 on May 21, 2014; and $160,000 on June 4, 2014.

15. In or about March 2014, **Dashner** assisted Davis and Tayce with the creation of a fraudulent list of investors in an iHeart facility in Mansfield, Texas, knowing that the project did not actually exist. **Dashner** knew that names of these physicians on the list would be submitted to CTB as guarantors of a loan, when in fact, none of individuals had invested in the Mansfield facility nor had agreed to guarantee the loan. The loan documents were submitted to CTB, and based upon these false and fraudulent representations, CTB funded a loan to iHeart and disbursed the proceeds as follows: $565,000 on April 3, 2014; $648,050 on April 16, 2014; $290,000 on May 28, 2014; and $160,000 on June 9, 2014.

All in violation of 18 U.S.C. § 371.

                              BRIT FEATHERSTON
                              ACTING UNITED STATES ATTORNEY

                              */s/ Nathaniel C. Kummerfeld*
                              NATHANIEL C. KUMMERFELD
                              ASSISTANT UNITED STATES ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No. 6:17CR 30 JUDGE RC/KNM |
| RACHELLE DASHNER | § | |

## NOTICE OF PENALTY

### COUNT 1

VIOLATION:   18 U.S.C. § 371
             Conspiracy to Commit Bank Fraud

PENALTY:     Imprisonment of not more than five (5) years; the greater of a fine not to exceed $250,000, a fine not to exceed two times the gross gain to the Defendant, or a fine not to exceed two times the loss to the victim, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00